**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BRUCE BARCLAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:14-cv-1200-LO-JFA |
| | ) |
| EXPERIAN INFORMATION | ) |
| SOLUTIONS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**EXPERIAN INFORMATION SOLUTIONS, INC.'S RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL**

This Court should deny Plaintiff's Motion to Compel because the information sought is irrelevant and a protected trade secret. Not only is the Plaintiff seeking documents that do not help his case, but Plaintiff also wants Experian to do Plaintiff's own work for him. As such, these requests are unnecessary and overly burdensome.

**INTRODUCTION**

Plaintiff, Bruce Barclay filed an action against Experian under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") alleging that his credit report contained information actually belonging to another consumer. To support his claims, Plaintiff issued several interrogatories and requests for production of documents. In response, Experian answered the interrogatories and produced over 2,800 pages of documents.[1] Despite such a production, Plaintiff now seeks irrelevant information including (1) Experian's computer source code, (2)

---

[1] As a point of reference, Plaintiff has produced 10% of the total volume that Experian has reviewed and produced. While Experian certainly understands a company is likely to have more documentation than an individual; nevertheless, it does help demonstrate that Experian has gone above and beyond its discovery obligations. Given the wide discrepancy in productions, Plaintiff still refuses to obtain a list of lawsuits on his own.

documents that discuss the criteria to match data, and (3) a list of lawsuits based on the mere "allegations of a 'mixed' or 'mismerged' credit file."

## ARGUMENT

**1.     The Matching Algorithms are Highly Classified Trade Secrets and Provide No Information to Plaintiff.**

The matching algorithms allow Experian to match identifying information to a particular consumer. These algorithms are highly technical and highly classified. Disclosure is not only overly burdensome but it could also significantly damage the entire company. The matching algorithms are what sets Experian apart from its competitors. As such, Experian has invested tens of millions of dollars to create the most accurate matching algorithm possible. This information is irrelevant, overly broad, and unduly burdensome.

A trade secret is often defined as consisting of "information that any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement of Torts § 757 cmt. b (1939); *see also* Va. Code § 59.1-336 (stating a trade secret "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"). The information must be a secret and not known even within the industry. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 418 (4th Cir. 1999). Experian's matching algorithm is not disclosed to anyone because it provides such a competitive edge over others in the credit reporting business. *See* Hughes Decl. ¶ 17, 18.

Courts have wide discretion to deny the Plaintiff's motion. *See* Fed. R. C. Pro. 26(c)(1)(G) (allowing a Court to issue a protective order "requiring that a trade secret . . . not be revealed"). Courts use a two pronged analysis in determining whether information should be

disclosed.  First, "the party resisting discovery must establish that the information sought is covered by the rule and that it will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998).  Second, "[i]f this showing is made, the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." *Id.*

These algorithms are closely guarded and only a select handful of Experian employees even have access.  *See* Hughes Decl. ¶ 17.  This proprietary information is important to keep secret for three primary reasons.  First, the matching algorithm provides Experian a competitive edge.  Armed with this information, other credit reporting agencies could not only match the accuracy of Experian but do so at substantially lower costs and risk.  These companies would profit off of Experian's hard work and sizable investment.  *See* Hughes Decl. ¶ 16.  Furthermore, a company looking to enter into the credit reporting industry would obtain a significant advantage as it could bypass the millions of dollars invested and countless hours of work needed to create a matching algorithm of its own.  *See* Hughes Decl. ¶ 16.

Second, knowledge of Experian's algorithms would allow consumers with poor credit histories to game the system and artificially inflate their credit worthiness.  Experian's credit reports would be trusted less and if this occurs pervasively, Experian's clients will go elsewhere for their credit reporting needs.

Third, if this information found its way to an identity thief, that person or group could do millions of dollars of harm to countless consumers.  An identity thief could more easily compile and sell credit information and hide their tracks from the authorities.[2]  Once an identity was stolen, thieves could use the matching algorithm to more easily match data to a consumer.

---

[2] The matching algorithm would not help a criminal steal an identity in the first place.

Furthermore, there is a risk that such identity thieves could corrupt the entire credit reporting industry by systematically reducing the accuracy of all credit reports.

It is for these very reasons that Experian so closely guards the matching algorithm. In such a competitive market, Experian's livelihood is at stake if disclosure reaches the wrong people. *See* Hughes Decl. ¶ 15-18. Moreover, millions of innocent people and many more millions of dollars are at risk. Even an agreement to disclose the materials to "attorney's eyes only" will not suffice. First, inadvertent disclosure is far too high a risk. *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 327 (S.D. Fla. 1985) (denying disclosure of financial strategy information because of the "spectre of catastrophic harm in the event of disclosure"). Experian keeps this information stored on a secure server with extremely limited access. Plaintiff's counsel cannot adequately protect the algorithm. Second, the risk of disclosure is intensified because Plaintiff's counsel routinely litigates against Experian's competitors. Once the information is disclosed, even inadvertently, the "trade secret . . .[is] lost forever." *Home Funding Group, LLC v. Myers*, 2006 U.S. Dist. LEXIS 90285, *5 (E.D. Va. Dec. 14, 2006) (quoting *Acierno v. New Castle Co.*, 40 F.3d 645, 647 (3d Cir. 1994)); *see also In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1033 (8th Cir. 1991).

Experian has already demonstrated that this information is not only a trade secret but that its protection is vital to the company's success, not to mention the dependability of the credit reporting industry. This matching algorithm is the most critical thing Experian owns. It should not be ordered to produce it. This Court has previously determined that technical systems like the matching algorithm at issue in this case constitute a trade secret. *MicroStrategy Inc. v. Bus. Objects*, 331 F. Supp. 2d 396, 428-29 (E.D. Va. 2004). In *MicroStrategy*, the Court explained

that software can be a trade secrets based on its "economic value" and the difficulty in independently creating it. *Id.* at 429.

Other than a conclusory statement, Plaintiff has failed to provide any reasons why disclosure is necessary. Further, even if Plaintiff could make such a showing (which he cannot), Plaintiff can provide no reason why this information outweighs the serious harm of disclosure. Courts "must balance the need for the trade secrets against the claim of injury resulting from disclosure." *Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).

It is vitally important that Plaintiff does not actually need this information at all. Plaintiff is ultimately looking for information on what caused the inaccuracy to occur so as to argue that Experian failed to follow "reasonable procedures to assure maximum possible accuracy of the information *concerning the individual about whom the report relates.*" 15 U.S.C. § 1681e(b) (emphasis added). The Plaintiff must show not that the procedures in general were unreasonable; rather, the Plaintiff needs to demonstrate Experian's procedures were unreasonable as applied to the specific consumer. Experian has already provided Plaintiff with the tools to make this determination. For example, Plaintiff already has access to the short and long administrative reports, as well as the dispute resolution logs. From these reports, Plaintiff can reconstruct the entire transaction history of the consumer. Plaintiff can obtain documents and affidavits from the relevant subscribers. Furthermore, Plaintiff is scheduled to take the deposition of an Experian employee where Plaintiff may ask about Experian's procedures and why information was listed on Plaintiff's credit report.

Collectively, Plaintiff will know what information was entered into Experian's system as well as what credit information was generated on his report. In other words, Plaintiff will have

5

sufficient information to try and convince a jury that given the inputs, it was unreasonable for Experian to insert the information onto the consumer's credit report. Plaintiff simply does not need the actual matching algorithm. Moreover, the algorithm is highly technical and on its own would not help Plaintiff's case. As the *Centurion* court noted, access to other means of proof is an important consideration. 665 F.2d at 325 n.6 (internal citations omitted).

The Plaintiff has failed to demonstrate why the matching algorithm source code is necessary to prove his case. Even if such a showing could be made, the harms here vastly outweigh the benefit to the Plaintiff. Experian's matching algorithm is the "crown jewel" of the company and disclosure could be devastating. *See* Hughes Decl. ¶ 13.

**2.      Plaintiff is Not Entitled to Highly Classified Information About the Matching Algorithms and Communications Regarding this Information are Protected by the Attorney-Client Privilege.**

For interrogatory No. 11, Plaintiff seeks the following information: "Identify any research, study, report, memo, email or document you have generated since January 1, 2011 that regards or discusses criteria or threshold used to match data to a file and any lawsuits, complain or alleged problems about that procedure." Experian has objected to this request saying it was vague. Experian also stated that the information was highly confidential and was protected by the attorney-client and work product privileges. Experian further objected as the request was overly broad and unduly burdensome. Despite these objections, Experian nevertheless produced hundreds of pages of documents regarding Experian's procedures about identifying information. During an initial meet and confer, Experian was unable to understand what Plaintiff was actually seeking by this request.

Once this Motion to Compel was filed, Experian again spoke with Plaintiff's counsel in an attempt to clarify the request. Despite the vagueness of this request as written, Experian now

believes that this request refers to communications and other documents which prompt Experian to update its matching algorithm.

Any documents reflecting the testing and actual refinement of proposed updates to the matching algorithm are as sensitive as the matching logic itself.  This information must likewise be protected as a trade secret because given this information, someone could reproduce Experian's matching algorithm and completely undo the competitive edge Experian currently enjoys.  *See* Hughes Decl. ¶ 16.

In addition, any communications between Experian's attorneys and its business people regarding issues which have arisen from previous complaints and which counsel believes merit further review of Experian's matching rules are protected by the attorney-client privilege. Having not understood the initial request, Experian did not search for and gather these communications because it did not understand them to be at issue.  Indeed, at the time of production, Experian was not withholding documents under a claim of privilege and so did not provide a privilege log.[3]  Now that it understands the request, Experian is fully willing to prepare and supply Plaintiff with a privilege log.  *See United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 415 (D. Md. 2005) (ordering a party to provide a privilege log for any documents it wants to withhold); s*ee also Rodriguez-Monguio v. Ohio State Univ.*, 2009 U.S. Dist. LEXIS 51955, *12-13 (S.D. Ohio, June 3, 2009) (denying plaintiff's motion for sanctions where, among other things, defendant offered to provide an updated privilege log); *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 U.S. Dist. LEXIS 14021, *19 (E.D. Mo. Feb. 24, 2009) (requiring a party to provide an updated privilege log).

---

[3] Per agreement with Plaintiff's counsel, the parties did not need to provide privilege logs for attorney-client communications taking place after the start of litigation.

7

Plaintiff argues that because Experian has not provided a privilege log, Experian has waived attorney-client privilege.  This argument is unavailing for several reasons.  First, it is not even clear that Experian was required to issue a privilege log yet.  *Mitsui Sumitomo  Ins. Co. v. Carbel, LLC*, 2011 U.S. Dist. LEXIS 74148, *14-15 (S.D. Fla. July 11, 2011) (explaining that the Federal Rules do not mandate when a privilege log is due or whether a failure to issue one results in waiver).  Indeed, some jurisdictions have explained that failure to initially issue a privilege log does not constitute waiver.  *See Bankers Sec. Ins. Co. v. Symons*,  889 So. 2d 93, 95-96 (Fla. Dist. Ct. App. 5th Dist. 2004); *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).

In addition, because Experian did not understand the request and because Plaintiff failed to properly describe the documents, Experian has not waived its privilege.  *See Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2013 U.S. Dist, LEXIS 150183, *10 (E.D.N.C. Oct. 18, 2013) (overruling party's objections and ordering the party to "supplement its answer and provide a privilege log to the extent it claims . . . privilege").  A misunderstanding as to the scope of a discovery request should not be considered waiver.  Furthermore, there is no harm or prejudice to the Plaintiff in this case.  *Angelone v. Xerox Corp.*, 2012 U.S. Dist. LEXIS 20482, *11 (W.D.N.Y. Feb. 17, 2012) (finding a delay in producing a privilege log did not result in "any prejudice to the Plaintiff"); se*e Thomas v. Old Town Dental Grp., P.A.*, 300 F.R.D. 585, 589 (S. D. Fla. 2014).

**3.      Plaintiff's Request for Prior Mixed File Lawsuits is Irrelevant to the Issue of Liability and is Overly Broad and Unduly Burdensome.**

Plaintiff seeks information regarding prior mixed lawsuits involving Experian. Specifically, Plaintiff seeks:

Interrogatory 10:   Identify every lawsuit in which you have been sued for an alleged violation of 15 U.S.C. §1681e that pertained to or was based upon the allegation of a mixed or mismerged file, tradeline or public record.  For each lawsuit, identify the style of the case, the court in which the action was brought, the case number, the name of the plaintiff attorney, the co-defendants in that case, the date the case was filed, and the disposition in the case.

Recently, Experian spoke with Plaintiff's counsel and both sides agreed on a narrowing of the interrogatory request.  Experian provided Plaintiff with the requested information and Experian considers this interrogatory fully complete.[4]  As such, this issue is moot.

## CONCLUSION

Plaintiff cannot provide any good reasons why disclosure of the matching algorithm or the supporting documentation is warranted here.  Indeed, Experian has already provided copious amounts of information which would allow Plaintiff to possibly demonstrate that Experian failed to follow reasonable procedures.  The matching algorithms are highly confidential and simply not necessary in this case.

---

[4] To the extent Plaintiff is still not satisfied, this interrogatory request is overly broad and irrelevant.  Past allegations cannot and do not indicate whether Experian violated FCRA here.  As such, other courts have rejected these requests.  *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 124-25 (M.D.N.C. 1989).  In *Mattingly v. Credit Management LP*, the court rejected the plaintiff's request to force Experian to identify previous lawsuits saying they were not relevant to any claim or defense and were overly burdensome.  2005 U.S. Dist. LEXIS 48470, *3-4 (D. Colo. June 7, 2005).  Finally, to the extent Plaintiff wants this information, Plaintiff has access to Pacer, Bloomberg, Lexis and Westlaw and can obtain it himself.

**EXPERIAN INFORMATION SOLUTIONS, INC.**

By:/s/H. Scott Kelly

David N. Anthony
Virginia State Bar No. 31696
H. Scott Kelly
Virginia State Bar No. 80546
*Counsel for Experian Information Solutions, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone:  (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com
Email: scott.kelly@troutmansanders.com

Eric S Jacobi (Admitted *Pro Hac Vice)*
*Counsel for Experian Information Solutions, Inc.*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  esjacobi@jonesday.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Andrew J. Guzzo
Kelly & Crandall PLC
4084 University Drive, Suite 202A
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*

Kristi C. Kelly
Kelly & Crandall PLC
4084 University Drive, Suite 202A
Fairfax, VA  22030
Telephone: 703-424-7572
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
*Counsel for Plaintiff*

Michael Robert Ward
Morris & Morris PC
11 South 12th Street, 5th Floor
Richmond, VA  23219
Telephone: 804-344-8300
Facsimile: 804-344-8359
Email: mward@morrismorris.com
*Counsel for Trans Union, LLC*

Gibson Sinclair Wright
Morris & Morris PC
11 South 12th Street, 5th Floor
Richmond, VA  23219
Telephone: 804-344-6314
Facsimile: 804-344-8359
Email: gwright@morrismorris.com
*Counsel for Trans Union, LLC*

/s/H. Scott Kelly
H. Scott Kelly
Virginia State Bar No. 80546
*Counsel for Experian Information Solutions, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone:  (804) 697-2202
Facsimile: (804) 697-1339
Email: david.anthony@troutmansanders.com

24892722v1