IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BRUCE BARCLAY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:14-cv-1200 (LO/JFA) |
| | ) | |
| TRANS UNION, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

COMES NOW the Plaintiff, BRUCE BARCLAY ("Plaintiff"), by counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure and in support of his Motion to Compel ("Motion"), he states as follows:

I.  **Introduction**

Before addressing the substance of Defendant Experian Information Solutions, Inc.'s ("Experian") Opposition to the Motion, it must be noted that Plaintiff's Motion should be granted for an additional, dispositive reason—Experian's utter disregard for the 5:00 Wednesday deadline mandated by the Court's Rule 16(B) Scheduling Order. (Dkt. No. 16 at ¶ 9(d)) ("Under this expedited schedule, a response must be **filed and served** by no later than 5:00 p.m. the Wednesday before the hearing. . . .) (emphasis in original). Despite its disregard for the Court's Order, Experian does not offer a *single* justification for why its pleading was filed almost a full day late. Accordingly, the Court should strike Experian's Opposition and grant Plaintiff's motion in its entirety. Out of caution, Plaintiff addresses each one of Experian's arguments below, but notes that Experian's late responses made it difficult for Plaintiff to timely and substantively respond to the issues raised by Experian as neither of Plaintiff's counsel were available in the

1

afternoon or evening on Thursday.

## II. Argument

As mentioned in Plaintiff's opening brief, this case arises because Experian mixed the credit file of the Plaintiff with other consumers, which resulted in Experian reporting more than 20 accounts in Plaintiff's credit file that did not belong to him. Based on this conduct, Plaintiff alleges that Experian violated one of the core provisions of the FCRA, which obligates credit reporting agencies ("CRAs") to follow "reasonable procedures to assure maximum possible accuracy" in their credit reporting. *Id*. Section 1681e(b) is violated if: "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). (emphasis added).

### 1. The Matching Procedures are Relevant and Necessary.

To prove that a CRA failed to maintain reasonable procedures to ensure maximum possible accuracy, it is obviously necessary to obtain the specific procedures that caused the inaccuracy to occur. Thus, Plaintiff issued a discovery request seeking all "documents related to [Experian's] procedures for assigning information reported to [it] to a consumer's file, including the matching procedures and algorithms." (*See* Dkt. No. 26-1, at RFP No. 21).

In response, Experian's argument almost exclusively focuses on its contention that the matching algorithms are a trade secret; therefore, it would be harmed by disclosure. (Def.'s Opp. at 2-8). This argument is unavailing because there is a Protective Order in place. Recognizing this reality, Experian offers a single reason why the Protective Order is insufficient—"Plaintiff's counsel cannot adequately protect the algorithm." *Id*. at 4. This is not true as reflected by Plaintiff's counsel's litigation history with this very Defendant (or any other defendant for that

matter). Plaintiff's counsel estimates she has litigated at least 50 cases against Experian alone and never once has Experian accused Plaintiff's counsel of improperly disclosing confidential documents even though such documents are produced in every case. Thus, despite Experian's assertion to the contrary, there is an extremely low possibility that Experian will be harmed due to an inadvertent disclosure.

Not only is there an extremely low possibility of harm, but this low possibility must be balanced against the undisputable fact that the matching algorithms are critical to Plaintiff's efforts to establish a § 1681e(b) violation. Experian cannot have it both ways. It cannot on one hand claim that it utilizes procedures to assure maximum possible accuracy, while on the other hand refuse to produce those very procedures. Thus, if the low possibility of inadvertent disclosure is too risky for Experian, it should be required to stipulate to liability on the second element of Plaintiff's claim, *i.e.*, that it did not follow reasonable procedures to assure maximum possible accuracy when it furnished Plaintiff's credit report to his potential lenders.

Of course, Experian will not agree to this stipulation; therefore, it is necessary for Plaintiff to obtain this information because it is Plaintiff who "bears the burden under § 1681e(b) to show that the consumer reporting agency did not follow reasonable procedures." *Dalton*, 257 F.3d at 415. Among other things, the matching algorithms will show that Experian repeatedly uses lax thresholds to match consumer data even when the "matches" contain obvious data conflicts, such as this case where two consumers had completely different middle names, addresses, and dates of birth (among other things). This information will be an important piece of evidence that helps establish that Experian failed to follow reasonable procedures when it published Plaintiff's credit reports.

Ironically, Experian's response only aids Plaintiff's argument that the matching

algorithms should be produced. In particular, Experian attaches the declaration of its routinely used professional witness, Kimberly Hughes ("Ms. Hughes"), to support its position. Yet, Ms. Hughes's declaration does exactly the opposite and confirms the importance of the information sought herein.

For example, Ms. Hughes asserts that Experian "employ[s] reasonable procedures that assure maximum possible accuracy of credit reports" and "Experian developed a reasonable matching system, based on extensive studies. … The facts and rules used for each factor have been revised time to time over the history of Experian's consumer credit business. These factors, and the accurate results provided by their utilization, are the key elements of Experian's business that distinguishes it from its competitors." (Dkt. No. 30-1, Hughes Decl. at ¶ 9). Experian will present similar information on summary judgment or at trial and it will be extremely difficult for Plaintiff to rebut these statements absent production of the very procedures that Ms. Hughes swears by. For this reason, this Court has ordered Experian to respond to this very discovery request in similar cases. *See, e.g., James v. Experian Info. Solutions, Inc.*, Case No. 3:12-cv-902 (E.D. Va. 2012) (Dkt. No. 57, Order at ¶ 7) ("With respect to Plaintiffs' Request for Production of Documents No. 7, Experian shall fully respond and produce all documents describing or identifying the means or manner in which information pertaining to a consumer (such as credit accounts, personal identifying information, public record information, etc.) is matched to a specific consumer.").[1] The results of this case should be no different.

2. **Experian Has Not Produced Anything Material Regarding Its Procedures.**

In an attempt to muddy the waters, Experian notes on two separate occasions that its

---

[1] Attached as Exhibit 1. Moreover, Experian also half-heartedly argues that the request is overly broad and unduly burdensome. Given that it has been order to produce these documents before, subsequent production should be rather simple.

document production in this case was substantial. (Def.'s Mem. at 1) ("Experian answered interrogatories and produced over $2,800 pages of documents."); (Def.'s Mem. at 6) ("Despite these objections, Experian nevertheless produced hundreds of pages of documents regarding Experian's procedures about identifying information."). These assertions are completely misleading. While Experian has produced 2,800 documents, approximately 2580 of those documents are entirely unrelated to Plaintiff's claim.[2] More specifically, aside from 218 documents relating to specific information in Plaintiff's credit file, all of the other documents produced relate to Experian's § 1681i *investigation* procedures, which is not at issue in this case. The chart below reflects Experian's current document production:

| Bates Range | Description |
| --- | --- |
| 1-171 | Barclay Individual Documents |
| 172-189 | Barclay Disclosure Log |
| 190-198 | Barclay Transaction Log |
| 199-218 | Barclay Admin Report |
| 219 | ACDVS Codes |
| 220-570 | ACDVS Evaluating & Problems |
| 571-915 | Consumer Dispute Procedures |
| 916-2439 | Consumer Investigation Procedures |
| 2440 | Dispute Codes |
| 2441-2497 | E-Oscar Disputes |
| 2498-2502 | E-Oscar Code Sheet |
| 2503-2510 | Glossary |
| 2511-2557 | Mixed File Procedures (8/2010) |
| 2459-2605 | Mixed File Procedures (1/2012) |
| 2606-2648 | Mixed File Procedures (4/2014) |
| 2649-2782 | Mixed File Procedures (10/2014) |
| 2683-2720 | NCAC Incentive Doc |

As shown, documents 219-2782 all relate to Experian's Automated Consumer Dispute Verification Procedures ("ACDV") or other procedures employed by Experian to investigate

---

[2] Even if Experian really produced 2,800 documents, such a task is hardly burdensome. This is a defendant who is sued all the time based on repeated conduct. The documents produced in this case are a mere fraction of Experian's production in other cases (usually after court order).

disputes.³ Experian knows this, yet it attempts to mislead the Court to avoid production of the real documents needed by Plaintiff to prosecute his case.⁴

Simply put, none of the documents produced in this case actually relate to § 1681e(b) procedures. Even in the broadest sense, none of the documents produced discuss the matching criteria used by Experian when it furnishes a consumer report or any other procedure to assure accuracy when it ***publishes*** credit reports. Thus, even if there were a "magic" number of documents that showed good-faith efforts to comply, Experian has not even tried to come close.

**3. Interrogatory #11 is Unambiguous and Plaintiff's Counsel Has Repeatedly Explained the Information Sought During the Meet and Confer Process.**

Lastly, Experian also argues that it "was unable to understand what Plaintiff was actually seeking" by Interrogatory #11, which unambiguously provides "[i]dentify any research, study, report, memo, email or document you have generated since January 1, 2011 that regards or discusses criteria or threshold used to match data to a file and any lawsuits, complaints or alleged problems about that procedure." (*See* Dkt. No. 26-2, at Int. No. 21). As explained to Experian's counsel on numerous occasions, this request seeks studies, research, emails or other documents discussing Experian's matching procedures or any alleged problems with those procedures.

During the meet and confer telephone call on February 17, 2015, Plaintiff's counsel was clear about the scope of this request. Moreover, Plaintiff's counsel sent a follow-up e-mail on

---

³ Although not apparent from their title, the "Mixed File Procedures" do not relate to Experian's matching algorithms or data matching procedures. Instead, these documents (all versions of the same manual) exclusively deal with the investigation procedures for Experian employees who handle mixed file disputes.

⁴ Ironically, Experian goes so far as to compare Plaintiff's document production to its own. *Id*. at 1, n. 1 ("As a point of reference, Plaintiff produced 10% of the total volume that Experian has reviewed and produced. While Experian certainly understands a company is likely to have more documentation than an individual; nevertheless, it does help to demonstrate that Experian has gone above and beyond its discovery obligations."). And despite Experian's recognition that it has more documents, it has actually produced less once its irrelevant documents are excluded.

two separate occasions regarding this request.[5] In response to both emails, Defendant's counsel demonstrated that he understood the request. *See* Ex. 2 ("I need a little more time on the other issues (lawsuits, matching algorithm ***and docs re: matching algorithm***) but I'll respond later today.") (emphasis added); Ex. 3 ("I completely understand, Andrew. I'll try and get a supplement out the door today. . . ."). Experian's attempt to now create confusion is disingenuous.

4. **The Parties Have Resolved Plaintiff's Interrogatory Regarding Previous Mixed File Lawsuits.**

At this time, the parties no longer need the Court's intervention regarding Plaintiff's discovery request seeking information on previous mixed file lawsuits. As a compromise, Experian has stipulated to an agreeable number of lawsuits within the past three years. Plaintiff disagrees with Experian's contention that these lawsuits are irrelevant to the issue of liability, but Plaintiff will address this argument at its proper posture.

## III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to enter an order striking Experian's objections to Request for Production No. 21 and Interrogatory No. 11 and compelling full and complete responses to the same.

---

[5] (*See* Ex. 2 & 3, respectively) ("I wanted to follow-up from our meet and confer on Tuesday. … Can you let me know your client's position on the remaining issues by COB. … Int. #11 – a full and complete response re: any research, study, memo, email or other documents regarding or discussing matching algorithms or any of the same documents discuss[ing] alleged problems. As discussed, a response that none exist is sufficient."); ("My concern is that the documents you identified are not remotely responsive to the request. If you believe a document identified is truly responsive, please let me know and we can discuss. Otherwise, it creates an appearance as if your client actually tried to respond (and it produced its research, studies etc.). Thus, we believe one of three answers are appropriate: (1) we don't have any; (2) here they are with actual responsive docs; or (3) we object.").

Respectfully Submitted,
**BRUCE BARCLAY**

*/s/*
Kristi C. Kelly, Esq. VSB # 72791
Andrew J. Guzzo, Esq., VSB #82170
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to the following:

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
(804) 697-5410
(804) 698-5118 Fax
david.anthony@troutmansanders.com
*Counsel for Experian Information Solutions, Inc*

Eric S. Jacobi
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Office 202.879.3622
ejacobi@jonesday.com
*Counsel for Experian Information Solutions, Inc*

                                                          */s/*
Kristi Cahoon Kelly (VSB# 72791)
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
E-mail: kkelly@kellyandcrandall.com
*Counsel for Plaintiff*