IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRUCE BARCLAY, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:14-cv-1200 (LO/JFA) |
| ) | |
| TRANS UNION, LLC, *et al*. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO RECONSIDER AND MOTION TO EXTEND THE TIME FOR FILING A RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW the Plaintiff, BRUCE BARCLAY ("Plaintiff"), by counsel, and for his Opposition to Defendant Experian Information Solution's Motion to Reconsider and Motion to Extend the Time for Filing a Response to Plaintiff's Motion to Compel ("Motion'), Plaintiff states as follows:

**I.        Background**

From the onset of this case, Plaintiff has diligently attempted to prosecute his claims despite Experian's best efforts to frustrate the discovery process. Within two days of receiving the Court's Pretrial Order on December 9, 2014, Plaintiff issued his first set of interrogatories and requests for production of documents to Experian on December 11, 2014. (*See* Dkt. No. 14). And even though Plaintiff issued his initial discovery requests as early as possible, he is no closer to the critical evidence that he needs to effectively prosecute his case, *i.e.*, the matching procedures used by Experian that ultimately resulted in more than 20 accounts appearing in his credit reports that did not belong to him. In other words, Plaintiff seeks to understand *why* these accounts ended up in his Experian credit reports when he applied for several mortgages.

1

Only days after receiving Experian's initial document production, Plaintiff's counsel immediately requested a meet and confer, which occurred on February 17, 2015. During the telephone call, Experian's counsel made it 100% clear that Experian would not produce any discovery related to its matching procedures without a court order. (*See* Ex. 1, February 19, 2015 e-mail from Andrew Guzzo to Eric Jacobi) ("Based on our discussion, we are going to move to compel the matching algorithms and past lawsuits—which we understand will not be provided absent a court order."). Thus, Plaintiff intended to immediately file his motion and notice it for a hearing on February 27, 2015. However, as a courtesy, Plaintiff noticed the hearing for March 6, 2015, because Experian's counsel planned to be out of the office on February 27th.

Plaintiff provides this background to the Court to put this motion in its proper context, *i.e.*, that Experian knew for weeks of the present issues and never wavered about its intention to withhold the matching procedures absent a court order.[1] Accordingly, Experian's representations of "continued efforts to reach an agreement" regarding the matching procedures are simply false. Moreover, there is no reason why Experian should have waited until March 5 to obtain the declaration from its professional witness, Kimberly Hughes, as it has known for weeks of the issues in this motion. More importantly, Experian has failed to demonstrate "excusable neglect" for its late filing. Instead, Experian selectively quotes cases out of context to create the appearance that an attorney's negligence constitutes excusable neglect when, in fact, the case law teaches exactly the opposite. (Def.'s Mem. at 6). In particular, the Supreme Court and the Fourth Circuit have specifically observed that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," and that "it [is] appropriate to

---

[1] In fact, Plaintiff's motion was filed on Thursday February 26, 2015, which provided even more time to Experian.

hold a client accountable for the mistakes of counsel. . . ." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 392 (1993).

Consistent with these teachings, the Court should deny Experian's Motion. Moreover, even if Experian timely responded to the Motion, the information sought by Plaintiff unquestionably may "lead to the discovery of admissible evidence," and, therefore, Experian should be compelled to respond to Plaintiff's discovery even if the Court finds that an attorney's mistake constitutes excusable neglect.

**II.      Analysis**

   **1.      "Run-of-the-mill inattentiveness by counsel" is not excusable neglect.**

Experian files this Motion pursuant to Fed. R. Civ. P. 6(b)(1)(B), which allows the Court to extend the time for the party to respond "after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To that end, Experian asserts that the four-factor test established by the Supreme Court in *Pioneer* supports a finding of excusable neglect. (Def.'s Mem. at 6-7). However, in its analysis regarding each one of these factors, Experian omitted a critical instruction from the Supreme Court, which teaches that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer,* 507 U.S. at 392. Thus, as a threshold matter, the Court should not even consider Experian's four-factor argument because ignorance of counsel is not excusable neglect.

This Court's decision in *Stronach v. Virginia State Univ.* is instructive on this precise issue. 577 F. Supp. 2d 788, 789 (E.D. Va. 2008). In *Stronach*, the Court denied the defendant's motion for leave to file a bill of costs after the time expired. *Id*. Without addressing the four-

3

factor test in *Pioneer*, the Court denied the motion, observing that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id*. In denying the motion, the Court explained:

> While the Court does not believe Defendants acted in bad faith, they have made no reasonable explanation for their delay in filing their Bill of Costs. First, Defendants explain that they mistakenly calculated the due date of their Bill of Costs from the date the Court issued its Memorandum Opinion—May 23, 2008—rather than the date of judgment—May 12, 2008. Second, Defendants explain that they filed their Bill of Costs late because their counsel is "woefully pitiful when it comes to math" and incorrectly calculated the Defendants' deadline. Neither of these explanations as to why Defendants filed their Bill of Costs twelve days late comes close to satisfying the "excusable neglect" standard. Defendants' failure to file a timely Bill of Costs ***amounts to nothing more than inexcusable inattentiveness by counsel, and the Court finds no reasonable basis to extend their time to file a Bill of Costs***.

*Id*. (emphasis added). The Fourth Circuit and other decisions are consistent with *Stronach*. *See, e.g.*, *Symbionics Inc. v. Ortlieb*, 432 Fed. Appx. 216, 220 (4th Cir. 2013) ("Rather, the failure to discover that the calendar display had reverted to January 2009, and the reliance on the resulting incorrect deadline computation, are the very essence of counsel's negligence here. Furthermore, this neglect is precisely the sort of "run-of-the-mill inattentiveness by counsel" that we have consistently declined to excuse in the past."); *Cronin v. Henderson*, 209 F.R.D. 370, 372 (D. Md. 2002) ("Further, the only reason that Cronin provides for the delay was the alleged ineptitude of her prior attorney. The Fourth Circuit has made it clear "that it [is] appropriate to hold a client accountable for the mistakes of counsel.") (quoting *Thompson,* 76 F.3d at 533 (citing *Pioneer,* 507 U.S. at 396–97)).

  The Court's rationale in *Stronach* should apply equally here because Experian's failure amounts to nothing more than "run-of-the-mill inattentiveness by counsel," who certainly should know this Court's expedited motion procedure given Experian's active docket in this District and

Division. And while Mr. Jacobi is taking the fall for the late filing, multiple attorneys have noticed their appearance in this case; all who have considerable experience in this Division and did not coordinate the appropriate time in which to file a timely response. Thus, it is not merely the mistake of Mr. Jacobi, but Experian's team of lawyers. Additionally, even if he was the only attorney, it was not merely Mr. Jacobi's failure to read the Pretrial Order in *this* case, but in all cases in which he has participated as the expedited motions procedure is uniform.

Accordingly, Experian's motion should be denied.

**2.    Experian has not met its heavy burden.**

In determining whether excusable neglect exists, the Supreme Court established a four-factor test, which considers: (1) "the danger of prejudice to the [nonmoving party]," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395. As the Fourth Circuit has noted, "the most important of these factors is the reason for [the] failure to timely respond." *Thompson*, 76 F.3d at 534. Moreover, the Fourth Circuit has explained that "excusable neglect is not easily demonstrated" and is warranted only in "extraordinary cases where injustice would otherwise result." *Id*. at 534.

Here, the second factor is the only factor that weighs in favor of Experian because Experian's time for compliance with the Court's Order has not elapsed. Thus, assuming the Court makes a determination on the merits of Experian's motion at the hearing on March 13, 2015, the time for Experian's compliance with the Court's Order has not been delayed by the present Motion. However, the remaining factors all weigh against Experian.

***Prejudice***. Plaintiff has already experienced prejudice due to Experian's failure to timely

respond. In particular, the Rule 30(b)(6) Deposition of Experian (which will occur in Texas) was scheduled for March 11, 2015. Now, the deposition needs to be pushed back because many of the Rule 30(b)(6) topics involve Experian's matching procedures and Plaintiff will need the compliance with the Court Order to effectively take the deposition. Worse yet, it is now March 11, 2015, and Plaintiff has been unable to take a *single* deposition in this case because of Experian's efforts to stall discovery at every stage, which includes Experian's efforts to only identify a single witness who has information regarding the allegations in this case.[2] And with the April 10, 2015 discovery cut-off approaching, any additional delays would significantly prejudice the Plaintiff, who cannot now issue additional written discovery on any information obtained and who must scurry to take the deposition of any additional witness discovered. The prejudice experienced by Plaintiff in this case is magnified by the fact that Plaintiff and his counsel have done everything within their power to diligently prosecute this case, including: (1) issuing discovery two days after the Court permitted the parties to do so; (2) setting up a meet and confer immediately after receiving Experian's document production; and (3) moving to compel the information on the first possible date[3] after the meet and confer. Now, despite these efforts to diligently proceed with the case, Plaintiff is still waiting for basic, yet critical discovery responses that are essential to Plaintiff's claim that Experian did not follow reasonable procedures to assure maximum possible accuracy when it published credit reports regarding

---

[2] On **February 23, 2015**, Experian identified Ms. Centanni as a witness likely to have discoverable information pursuant to Rule 26(a)(1). Experian previously identified another employee, Lisa Wallace, but Experian withdrew this designation after Ms. Wallace was noticed for a deposition. Thus, Ms. Centanni is the only person (employee or otherwise) that Experian has identified as having information related to this case despite Plaintiff's discovery requests seeking identities of individuals with knowledge. And, of course, Ms. Centanni was only disclosed because she will serve as Experian's Rule 30(b)(6) representative.

[3] Delaying only one Friday as a courtesy to Experian's counsel.

Plaintiff.

Moreover, Plaintiff's counsel is prejudiced because they now need to devote time to respond to this additional briefing, as well as making an additional appearance in Court to address this Motion—all due to the inattentiveness of a team of seasoned lawyers.

***Reason for the Delay***. As mentioned in the previous section, Experian's reason for the delay is nothing more than "run-of-the-mill inattentiveness by counsel" admonished by the Fourth Circuit and this Court. Plaintiff will not bore the Court with a repetition of his same argument, but incorporates the previous section herein. Moreover, Experian's representation that it was focused on resolving the Motion to Compel is patently false. (Def.'s Mem. at 3) ("On Wednesday evening, March 4, counsel recognized that the parties would not be able to reconcile their differences on this issue."). From the moment the meet and confer occurred on February 17, 2015, Experian made it *absolutely* clear it would not produce any information regarding its matching procedures absent a court order. That has always been Experian's position. It has never wavered in that regard. For this reason, when Plaintiff's counsel sent a follow-up e-mail to Experian's counsel on February 19, 2015, he wrote "[b]ased on our discussion, we are going to move to compel the matching algorithms [RFP No. 21] and past lawsuits—which we understand will not be provided absent a court order." (Ex. 1). For this reason, Plaintiff's counsel did not even include a bullet point for RFP No. 21 as it was absolutely clear that Experian refused to respond. Thus, the Court should disregard Experian's misrepresentations that its efforts to resolve the motion further caused it to respond a day late. This is simply false.

***Good faith***. Finally, the fourth factor also does not support Experian here. While Plaintiff's counsel has no doubt that Experian's outside counsel acted in good-faith, Plaintiff counsel notes that Experian has utterly disregarded its discovery obligations in this case and has

failed to be candid with the Court regarding its discovery compliance. For example, Experian has lodged a myriad of general and specific objections to discovery requests it knows are both relevant and reasonably calculated to lead to the discovery of admissible evidence. (Attached as Exhibits 2 & 3). Further, despite being served with discovery on December 11, 2014, Experian did not actually produce the requested documents until the second week of February. And even then, none of the documents produced actually related to § 1681e(b) procedures – which is the only count against Experian in this case.

Nevertheless, in response to Plaintiff's Motion to Compel, Experian then represented to the Court that it had "gone above and beyond its discovery obligations." (Def.'s Opp. Mot. Compel at 1, n. 1). To that end, Experian deceptively claimed that it had produced 2,800 documents when, in reality, Experian knew that outside the Plaintiff-specific documents, none of these documents related to its § 1681e(b) procedures or any matters that were remotely at issue in this case. More specifically, aside from 300 documents relating to information in Plaintiff and his father's credit file, all of the other documents produced relate to Experian's § 1681i *investigation* procedures, which is not at issue in this case. As provided in Plaintiff's reply in support of his motion to compel, the chart below reflects Experian's current document production:

| Bates Range | Description |
|---|---|
| 1-171 | Barclay Individual Documents |
| 172-189 | Barclay Disclosure Log |
| 190-198 | Barclay Transaction Log |
| 199-218 | Barclay Admin Report |
| 219 | ACDVS Codes |
| 220-570 | ACDVS Evaluating & Problems |
| 571-915 | Consumer Dispute Procedures |
| 916-2439 | Consumer Investigation Procedures |
| 2440 | Dispute Codes |
| 2441-2497 | E-Oscar Disputes |

| 2498-2502 | E-Oscar Code Sheet |
| --- | --- |
| 2503-2510 | Glossary |
| 2511-2557 | Mixed File Procedures (8/2010) |
| 2459-2605 | Mixed File Procedures (1/2012) |
| 2606-2648 | Mixed File Procedures (4/2014) |
| 2649-2702 | Mixed File Procedures (10/2014) |
| 2683-2720 | NCAC Incentive Doc |
| 2721-2800 | Plaintiff's father's documents from Experian |

As shown, documents 219-2720 all relate to Experian's Automated Consumer Dispute Verification Procedures ("ACDV") or other procedures employed by Experian to investigate disputes.[4] Experian knows this, yet it attempts to mislead the Court to avoid production of the real documents needed by Plaintiff to prosecute his case.

Thus, while Experian's counsel made a good-faith mistake in this instance, the Court should consider the totality of the circumstances when determining good-faith.

**3.    The Motion to Compel Should Have Been Granted Anyway.**

Even if the Court finds that excusable neglect exists, Experian still should fare no better for the reasons explained in Plaintiff's prior briefing. In short, to prove that a CRA failed to maintain reasonable procedures to ensure maximum possible accuracy, it is obviously necessary to obtain the specific procedures that caused the inaccuracy to occur. The specific procedures that caused the inaccuracy in this case are Experian's overly broad matching procedures that "mixed" or "merged" Plaintiff's credit information with his father's even though they had completely different middle names, addresses, and dates of birth (among other things).

Like its opposition to the motion to compel, Experian again attempts to claim that such

---

[4] Although not apparent from their title, the "Mixed File Procedures" do not relate to Experian's matching algorithms or data matching procedures. Instead, these documents (all versions of the same manual) exclusively deal with the investigation procedures for Experian employees who handle mixed file disputes.

9

procedures are irrelevant, which is not even the legal standard governing the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Thus, even though the matching procedures are unquestionably relevant, Experian still misses the point because discovery must only be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. And regardless, Experian's relevancy argument is a classic example of distinction without a difference. (Def.'s Mem. at 4) ("The materials that Plaintiff seeks from Experian are related to the algorithm that applies to *all consumers* and is not tailored to any individual. As such, it is not relevant to Plaintiff's claim.") (emphasis in original). Of course, if the matching procedures apply to all consumers, then those same procedures must apply to Plaintiff and must be produced.

### III. Conclusion

For the foregoing reasons, the Court should either deny Experian's Motion, or, in the alternative, enter an order striking Experian's objections and granting Plaintiff's Motion to Compel in its entirety.

                                                Respectfully Submitted,
                                                **BRUCE BARCLAY**

                                                */s/*
                                          Kristi C. Kelly, Esq. VSB # 72791
                                          Andrew J. Guzzo, Esq., VSB #82170
                                          Kelly & Crandall, PLC
                                          4084 University Drive, Suite 202A
                                          Fairfax, VA 22030
                                          Telephone: 703-424-7570
                                          Facsimile: 703-591-0167
                                          Email: kkelly@kellyandcrandall.com
                                          Email: aguzzo@kellyandcrandall.com
                                          *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to the following:

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
(804) 697-5410
(804) 698-5118 Fax
david.anthony@troutmansanders.com
*Counsel for Experian Information Solutions, Inc*

Eric S. Jacobi
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Office 202.879.3622
ejacobi@jonesday.com
*Counsel for Experian Information Solutions, Inc*

 

                                 */s/*
Kristi Cahoon Kelly (VSB# 72791)
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
E-mail:  kkelly@kellyandcrandall.com
*Counsel for Plaintiff*