UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
BRUCE BARCLAY,                   :
              Plaintiff,         :
                                 :
     vs.                         : Case No. 1:14-cv-1200
                                 :
                                 :
TRANS UNION, LLC., et al.,       :
              Defendants.        :
                                 :
---------------------------------:
```

HEARING ON MOTIONS

March 13, 2015

Before:   John F. Anderson, Mag. Judge

APPEARANCES:

Kristi C. Kelly, Counsel for the Plaintiff

Mary C. Zinsner and Jennifer L. Swize,
Counsel for Defendant Trans Union

2

NOTE:  The case is called to be heard at 10:11 a.m. as follows:

THE CLERK:  Barclay versus Trans Union, LLC, et al., civil action 14-1200-cv.

THE COURT:  Well, we --

MS. KELLY:  Good morning, Judge -- oh, sorry.

THE COURT:  Plaintiffs on that side.  Defendants on that side.  Thank you.

MS. KELLY:  Kristi Kelly for the plaintiff.

THE COURT:  Thank you, Ms. Kelly.

And who is going to argue on behalf of the defendant?

MS. ZINSNER:  Good morning, Your Honor.  Mary Zinsner for the defendant.

It's my pleasure to introduce to the Court Ms. Jennifer Swize, who is a partner with the firm of Jones Day, who has been asked to step in and address the Court's questions regarding responsibility for this case.

THE COURT:  Has she been admitted yet?

MS. ZINSNER:  Your Honor, that's the one matter I wanted bring to your attention.  Her pro hac vice application was submitted last evening.  And I would like to move orally to have --

THE COURT:  Has she paid the fees?  I mean, I -- yeah.  If someone wants to come in and argue in this case, and this motion wasn't set yesterday, it seems like they could have

3

gotten their papers together and got them filed during normal business hours and presented whatever information it was that needed to be presented to the Court for the Court to make that decision in the normal course of business, Ms. Zinsner.

MS. ZINSNER:  I understand, Your Honor.

THE COURT:  Why wasn't it filed and the fee -- has the fee been paid?

MS. ZINSNER:  I believe it was filed electronically and the fee was paid.  I can't --

THE COURT:  I don't know either.  I mean --

MS. ZINSNER:  Yes, yes, Your Honor, the fee was paid.

Your Honor, I apologize.  I know there was some confusion as to who would be handling this motion yesterday. And I advised them that I would be moving orally today that that motion for pro hac vice be granted.

Ms. Swize is a member of the Maryland Bar, as well as the D.C. Bar.  She is a member of the United States Supreme Court, as well as multiple Courts of Appeals, and the District Court of Maryland and D.C.  She has been admitted several times pro hac vice to this court in various cases.

It's our intent today for me to address some questions the Court has --

THE COURT:  Well, only one lawyer is -- I mean, I'll let one lawyer argue the motion to stay and one lawyer argue the motion for reconsideration, but I'm not going to have two

4

lawyers arguing one motion.

MS. ZINSNER:  That's fine, Your Honor.  Your --

THE COURT:  So, I mean, there is no tag-teaming around here.

MS. ZINSNER:  I understand.  The Court's order when I read it addressed counsel for defendants to address the number of cases in this court and the awareness of the particular rule.  And I wanted to address that Court's question as it relates to our firm because there is no question that I believe there has been a lapse of responsibility on our part as local counsel.

Your Honor, given my long practice in this court, I feel personally responsible for the cases that our firm handles in this court even if I'm not associated and don't have my name on those pleadings.  And I recognize the shortfall on our part, and I apologize to the Court for that.

And even though the associate working on the case both at Troutman Sanders and Jones Day were not aware of the particular provision in the Rule 16(b) notice, I feel that we were on notice of it, and it was incumbent on us to alert the Jones Day lawyers to this particular rule.

It's the question I am most frequently asked as a practitioner in the Eastern District of Virginia as --

THE COURT:  Well, it was a Court order.  It wasn't a rule.  It was in a Court order.

5

MS. ZINSNER:  Agreed, Your Honor.  Agreed.  And a quick call or an e-mail to somebody who practiced frequently in this court would have resolved the problem.

So what we have here is a confluence of circumstances that should have occurred but didn't occur.  There was a snowstorm.  What happened, they should have been --

THE COURT:  No, no.  A snowstorm in Dallas on Wednesday is no excuse.

MS. ZINSNER:  Your Honor --

THE COURT:  And, you know, Ms. Zinsner, I don't understand how you can say that someone who starts having a snowstorm in Dallas on Wednesday afternoon can cause a delay in filing a pleading on Wednesday.

MS. ZINSNER:  That wasn't -- that was one of the parts of the confluence of circumstances that led to this situation.  There was also the emphasis on attempting to resolve this discovery dispute.

There are many cases that Experian is a defendant in in this court, and their mantra, as is mine, is to resolve these cases as efficiently and quickly as possible, and resolve discovery disputes as well.  Because they realize the time that these disputes take and the costs on the Court and counsel.  So that was going on.

But again, Your Honor, I recognize fully that we were aware of the deadline and should have alerted Jones Day.  There

6

should have been a call to chambers Wednesday afternoon that we realized that the deadline was about to pass and we had not filed our opposition brief.  There should have been some type of explanation to the Court, some type of request given the impending weather and the closure of the court the next day as to some -- whether the Court might consider continuing the hearing, et cetera.

Your Honor, there are three divisions of this court, there are different rules in each division, and it's our responsibility at Troutman Sanders to ensure that when we have cases filed in these different divisions, that we're aware and tell our co-counsel of the particular rules of the case.

We are open 24/7 to answer the questions of our colleagues, and I truly am sorry for this situation that the parties are in presently before the Court.

And I would ask the Court's accommodation to allow Ms. Swize, who is here at the client's request, to address the situation before the Court.

THE COURT:  Okay.  Well -- okay.  I will assume the paperwork will be processed in the normal course of business, and your request will be granted.

So I'll allow you to argue in front of the Court this morning.

MS. SWIZE:  Thank you, Your Honor.

THE COURT:  Two things you need to address.

MS. SWIZE:  Yes.

THE COURT:  One is, this was an order of the Court, not a rule of bankruptcy procedure or other kinds of rules of court.  And your pleadings don't indicate anything about it being a violation of a Court order and seeking relief from a Court order that set that schedule.

And the other is, I need to have you directly address how Jones Day can take the position in this case that Jones Day, representing Experian in this case, did not know when the opposition was due.

MS. SWIZE:  Yes, Your Honor, I will address both of those points.  I apologize for the inconvenience and the missteps with my pro hac vice application, and I do appreciate you letting me represent the firm and the client before you this morning.  So I appreciate the accommodation.

And I would like to -- I am going to address both of those points.  I understand they were directed in your order. I would like to be very clear from the beginning to say that we take responsibility for this as a firm.  We made a mistake.  We filed out of time and did not comply with the Court order, and we are responsible for that.

The Court's order noted, and you've noted this morning, that Jones Day handles a significant number of cases in this district, in this division.  We pride ourselves on that.  We value our representation before the Court, and we

8

strive for perfection.

If there is any good news that could come out of this, it is that this is an aberration.  This is a mistake. And this was a case that wasn't handled the way it should have been.  But we do regularly strive to meet and comply with all of the court deadlines.

Let me turn to what happened here.  In this case the lawyer that was handling the matter was acting diligently and received the motion.  He has handled prior Experian cases in different divisions, including in this division, but he has been able to either successfully avoid discovery disputes or they settled.  This was the first time he was faced with a nondispositive motion.

And what I'm doing right now, Your Honor, I just want to explain the circumstances --

THE COURT:  It's the firm that represents this client, not an individual lawyer.  And it's the firm's responsibility to make sure that anyone that it assigns a task on a case in this court, that he or she knows what they need to do and when they need to do it by.

So the idea -- I mean -- and that's why I said, I want to know about Jones Day.  I don't care necessarily about an individual, an attorney, but it is Jones Day's responsibility to see that things get done, that rules are followed, and that orders are complied with.

9

And that's the issue that we've got here today, is whether Jones Day complied with an order of this Court.

MS. SWIZE:  Your Honor, I understand that.  And that is why the firm has sent me because I am speaking on behalf of the firm.  And we understand --

THE COURT:  And they decided that last night, is that right?

MS. SWIZE:  It was an evolving decision in conjunction with the client.  And again, I do apologize for the lateness of this appearance.  We did consult with plaintiff's counsel this morning to make sure she didn't have an objection so that we weren't inconveniencing her.  But I understand that doesn't address the issues before the Court and from your perspective.

So again, I do appreciate the accommodation.  And I am speaking on behalf of the firm.

We practice regularly in this court.  And, yes, just like Ms. Zinsner noted for Troutman, we as a firm and as many individuals in my office and elsewhere know the rules of this court and know the schedule for nondispositive motions when they were in Rule 16(b) scheduling orders.

There was -- when I investigated this to see what happened, it reminds me of those conversations where I have had where two people are talking, and they are having the same dialog, but in retrospect they realize they're having different

10

conversations.

The lawyer in this case, who would have been the front line person handling the response, was under the impression that there was not a schedule.  Again, this was the first time he handled a nondispositive motion.  He was trying to be diligent so that he could determine whether there was a schedule.  He didn't contact Troutman.  Troutman didn't contact us.  We take responsibility for that.

THE COURT:  Well, the representation in the paper is that the lawyer read the initial order that came out.  That initial order says that there needed to be a joint discovery plan filed, and that there was going to be a conference in front of a magistrate judge.

That order that came out of that Rule 16 conference is in the docket sheet, and was entered prior to that pro hac admission of that attorney.  And I don't think there is anything unclear about the Rule 16 order.

And the idea -- I mean, you know, it's clear from what at least was indicated in the papers, that the attorney was aware of that scheduling order that initially came out that directly referenced the need for a joint discovery plan and the time in which the magistrate judge would be having a conference after that.

And so, it wouldn't have been difficult to look to see three docket entries down that there was a Rule 16

scheduling order entered in this case.

MS. SWIZE:  I completely agree, Your Honor, absolutely.  In many ways we were on notice of the deadline in the Rule 16(b) schedule, both through the earlier order on the docket because there wasn't a deadline specified in the Local Rules.  And I am not trying -- at this point I really am not trying to excuse that or justify that.  I just want to lay out the scenario to give you the broader context and what happened.  Because it is absolutely true that the lawyer did not know there was a deadline.

Given that understanding that he had, which was wrong, he then proceeded to independently identify a reasonable time to file.

THE COURT:  How reasonable is that?  That a lawyer didn't realize that there wasn't a deadline for filing an opposition?  Was it -- I mean, did he not know that there was going to be a hearing?  Obviously he knew that because the notice and the motion and the memorandum indicated that it was going to be heard on a Friday at 10 o'clock.

MS. SWIZE:  Yes, Your Honor.

THE COURT:  And the lawyer figured that they could file an opposition at any point in time?

MS. SWIZE:  No, Your Honor.  He knew about the hearing.  And not knowing of a deadline, he then assessed when would -- having received the motion late on Thursday, when

12

would be a reasonable time to respond.  And it was his goal coincidentally to file by Wednesday.

If some of these events hadn't transpired, we may not be here, but we also may not have corrected the problem.  But we're here.  And he had the goal and the intent to file by Wednesday so that the Court and Mr. Barclay's counsel would have enough time to read our opposition, file a reply, appear on Friday.  And that was his intent, and he was operating in that system.

Given that, we certainly did not confirm that he understood that that Wednesday was not simply a goal, but that it was an actual deadline, that it was a 5 p.m. deadline.  Our conversations with Troutman didn't confirm that either.  But there were these -- given his intent to file by Wednesday, it was consistent with our understanding of what should have happened.

As we got closer to Wednesday and throughout that week, the lawyer was trying to resolve the issues.  In fact, he did successfully resolve one of the issues.

We all know this court moves at a fast pace, and it's much better to avoid being here on Friday mornings and resolve things with the parties so that people have the discovery and the documents they need so we can go to trial.  And he was working hard to do that, and he did in fact resolve one issue.

There was the one outstanding issue that he continued

13

to work on.  He determined it wasn't going to be resolved and he needed to file an opposition.  He had been preparing it.  He also needed some support in a declaration.  He started with one individual.  It became clear that that individual was not the right person.  And then he identified the second individual.  And this is where the confluence of circumstances -- and again, I'm not offering this as any sort of justification, but just to explain the narrative.

That when the snowstorm happened, our declarant said she was not going to be able to complete this in a timely fashion and, therefore, it would be better to file on Thursday.

THE COURT:  Well, let's go back to what you said in your papers.

MS. SWIZE:  Okay.

THE COURT:  So that I can understand what the facts are.  Page 3 you indicate that the parties have -- and this is discussion, what you're talking about, that they are trying to resolve the matter.  And obviously there has to be a good faith consultation before a motion gets filed.

MS. SWIZE:  Yes.

THE COURT:  So if Experian had any real desire to try and resolve this motion, it had the opportunity to do that before it got filed.  The issues were raised, lines were drawn, and the motion got filed.

So the opportunity for a good faith consultation

14

preceded the Thursday on which this motion was filed.  I understand it may have gone on following that too.  But once a motion gets filed, you know, the idea isn't, I really have to now pay attention to the issues.  It's either, I've got to get this resolved, or I need to file an opposition.

And, you know, if you've got to go on two different tracks, you've got to go on two different tracks.

MS. SWIZE:  Absolutely.

THE COURT:  If you're only going to go on one track, the tract you go on is getting an opposition filed in a timely manner.  Not, I'm going to work it out with the hope that, you know, I'm not going to need to file an opposition.

So you indicate in the brief here that counsel for Experian continued to investigate whether a compromise could be reached on that second issue.  On Wednesday evening counsel recognized that the parties would not be able to reconcile their differences.  Once his attention was no longer focussed on resolving the motion, he realized he would not be able to file Experian's response on Wednesday.

That sounds to me like there wasn't really any work being done on the opposition until his attention was no longer focussed on trying to resolve the dispute.

So you didn't start doing the opposition until Wednesday.

MS. SWIZE:  Your Honor, there was effort I know to

15

start the declaration and the opposition.  I think there was -- it's not so neat to sort of say that one -- there were first efforts to try to resolve it and then things switched into motion mode or opposition mode.  They were different -- they were being attempted simultaneously.  There was a shift in emphasis when our lawyer identified that we were going to have to file an opposition.  And that had been started earlier, and we identified an individual who turned out wasn't going to be the right person to speak to the issues in the motion to compel.  And so, we switched to Ms. Hughes, and that's when the snow storm came.

Again, I'm not trying to say that any of these reasons explain or justify the initial failure to identify the proper date or our failure to make sure he understood.  But given his understanding that Wednesday would be an appropriate time, then he continued, everything was on track when the snow storm came, when the declaration had to come from a different individual, when we weren't aware that filing Thursday morning, albeit later than Wednesday, was going to be out of time --

THE COURT:  Well, it wasn't even Thursday morning. It was Thursday afternoon.

MS. SWIZE:  Thursday afternoon, yes, Your Honor.

THE COURT:  And there was no indication in what was filed on Thursday as to any reasons.  It was just, here is my opposition.

16

MS. SWIZE: And hindsight is 20/20, and we should have had it beforehand. We should have alerted the Court. We actually probably should have stopped the filing, contacted the other side to see if they had any opposition to our time, contacted the Court, conferred with Troutman, made sure we understood what steps.

Our intent was to come to court on Friday and apologize. That clearly wasn't the right approach. We should have taken proactive steps beforehand. But that was our intent, to address it first thing with the Court on Friday.

THE COURT: Why wouldn't -- if that was your -- when did you form that intent? After you got their opposition -- after you got their reply saying, you know, this was late?

MS. SWIZE: No. It was when we filed the opposition -- excuse me.

THE COURT: So you filed it knowing it was late?

MS. SWIZE: There was some -- there were communications between the two law firms that did not catch that it was a late filing. And it went ahead and there was the instantaneous decision, let's get this on file, and we will handle this through an apology to the Court.

And I recognize, Mr. Zinsner recognizes, Mr. Clark, Mr. Jacobi recognizes that was not the proper way to handle it, absolutely. We should have taken our time, taken the few minutes it would have taken to contact the other side, to

17

contact chambers, to do our motion to enlarge for time at that point, absolutely, Your Honor.

I would like to emphasize that he was trying to be cooperative. We have met all of the deadlines in this case. I understand this is not considered in the broader context of our representation before this Court, but we do take these rules seriously. It is a schedule that differs from the other divisions and differs from other courts.

Again, I am not justifying that -- that's the first thing I do, that is the first thing everybody should do, understand what the rules are and understand what the deadlines are.

In the context of the standard, inherently the standard for excusable neglect understands --

THE COURT: Why does that standard apply to failing to comply with a Court order?

MS. SWIZE: Your Honor, I would submit that it's the same as good cause. And under either standard --

THE COURT: You think good cause is the same thing as excusable neglect?

MS. SWIZE: Yes, Your Honor, and I believe the case law -- there are cases that discuss those standards interchangeably. And it's not -- the premise is that something wrong happened. And so, at this point what is the consequence of that? And is the consequence striking our pleading or

18

ignoring our pleading?

And given the good faith effort, we did resolve one issue, we were trying to resolve one issue -- again, I'm not saying that any of these reasons would ever be, you know -- that we should practice this way, certainly not. But we were acting in good faith, actually being attentive to the case.

And the case law focuses on inattentiveness, misconduct. The record is clear that we were attentive to the case. We have a cordial relationship with the other side. We were trying to address this.

This is a significant discovery from our client. Certainly we're not -- we were taking it seriously. We missed a deadline, but that isn't a reflection of how seriously we took this and our intent to oppose the motion to compel on the merits.

And that's why we're here this morning, to ask the Court to consider the motion to compel on the merits.

THE COURT: Well, one of the cases you cited, the Thompson versus du Pont case, talks about excusable neglect and states that inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.

Isn't that what we have here?

MS. SWIZE: Your Honor, there is inherently in the standard that there is going to be -- there are going to be

19

times when there was a mistake, a miscomprehension of the rules. And that's why the Supreme Court's test in <u>Pioneer</u> and as it's applied in <u>Symbionics</u> and <u>Thompson</u> and all of the other cases evaluates the totality of the circumstances.

It does say usually. Obviously, it's not anything that should be done in the common course or, you know, litigation would be mayhem.

But in this particular circumstance, with the lawyer trying very hard to cooperate, attentive to the case actually -- he wasn't sitting on the issue. He was trying to resolve it. He was getting the support he needed for the paper. It was, it was less than one day late. Not that -- again, not that any delay was okay --

THE COURT: Well, you know, if it was less than one day late and it was two weeks before the hearing, that's one thing. But filing something at 2 o'clock in the afternoon for something that is going to be heard at 10 o'clock the next morning -- and, you know, part of this is giving the other side notice, but the other part is giving the Court notice and the opportunity to review something.

And honestly, when I didn't get the opposition on Wednesday afternoon, I checked my computer again Wednesday night at 11 o'clock, saw that nothing had been filed, checked it again on Thursday morning and saw nothing had been filed, and I decided this case, there wasn't going to be an opposition

20

because, you know, it didn't get filed.

And, you know, you're right, this is a significant motion, and I understood that. And that's why we have time tables for people to file pleadings, so that significant issues can get looked at, considered by the Court, considered by the parties, and decided in a timely manner.

MS. SWIZE: Again, Your Honor, I of course completely agree, and I apologize for the time not only last week but also this week that this has cussed, absolutely.

It was our intent -- and again, ironically, he identified Wednesday as the appropriate day that he was aiming for. But with additional events that happened and not being aware that that was the deadline, it did spill over into Thursday. There was the snow storm here. There was the snow storm in Dallas.

And I completely understand the Court's position. And again, I apologize that we didn't get it to you at a sufficient time, and particularly that you were attentive to it and looking to see if something had come in.

THE COURT: Tell me how even -- let's just for the sake of this part of our discussion, assume excusable neglect would be the standard that should be applied for failing to comply with a Court order. How do you see the facts of this case falling into the excusable neglect exception.

MS. SWIZE: Your Honor, the way I read the cases is

21

that there is a divide between attentiveness and inattentiveness. And the record of this case, both this particular issue and throughout the history of this case, has been attention. The parties have been cooperative. We have engaged in discovery discussions. We have produced discovery.

And then on this very issue, there were discussions. The lawyer attempted to resolve both of the issues that were brought in the motion to compel and successfully resolved one. There was attention to the case. There was not attention to the deadline, and we acknowledge that. But there was an attentiveness --

THE COURT: But that's what all these cases are dealing with. It's not that the people didn't file a notice of appeal. They filed a notice of appeal late.

Or it's not that they didn't file a claim. They filed it late.

So, attentiveness -- I mean, in all of the cases that you're relying on, people did something, they just did it late. So it's not like they didn't do it at all. They just weren't paying attention to the time timetable in which it was going to be done.

So the attentiveness part I don't understand.

MS. SWIZE: Your Honor, I will address that. So, you know, there are -- each one of these cases has there own set of facts. For the notices of appeal, those are jurisdictional

22

issues.  Some of those were filed very late and out of time. That's where the fact that the one-day delay comes into play.

In their response to our motion, plaintiff acknowledged that this has not had an impact on the judicial proceedings, and didn't have any argument that there was actual prejudice.  There are some other arguments about prejudice in terms of discovery generally, but not related to this issue.

And so, there are cases that, the Batton case for one, where there was a one-day delay.  And in the context of the case and seeing what else was going on, this isn't the sort of case where the lawyer just sort of glibly said, I'm not good at math, or I'm going to completely rely on a calendaring error from my computer system.  He actually took steps to try to identify a deadline.

Granted, he did not take the step to identify the order.  And as you've pointed out, it's referenced in one of the orders that he did consult.

THE COURT:  But if you put a date into a computer and it calculates it wrong, you're still trying, you're just not doing a very good job at it.

I mean, the attentiveness part of it -- go ahead.

MS. SWIZE:  And I don't want to split hairs, Your Honor, but I do think it's important to evaluate in the full circumstance of what was going on that he was -- he was intending to file at a time that would not have inconvenienced

23

everybody and, ironically, likely would have been close to or met the Wednesday deadline.  Then there were other circumstances.

        We did not do a good job communicating with local counsel, we acknowledge that, but we tried to rectify it as soon as possible.  Again, we've learned our lesson in how to do that --

        THE COURT:  When did you try and rectify it?

        MS. SWIZE:  We intended to come to court on Friday morning to address the issue, and then on Monday --

        THE COURT:  And why is that as soon as possible?  You filed it at 2 o'clock on Thursday afternoon and you were going to wait until 10 o'clock Friday morning to rectify it.  How is that as soon as possible?

        MS. SWIZE:  I may have -- yes, I overspoke.  But we did intend to rectify it promptly, if I may amend that.

        We didn't -- in hindsight, and, you know, if we had had the benefit of practitioners who come here regularly, would we have done something different?  Absolutely.  Do we know --

        THE COURT:  Jones Day comes here regularly.

        MS. SWIZE:  Yes, Your Honor.  And I --

        THE COURT:  You know, it is a very big firm.  It can have people doing a number of different tasks at the same time. Not, I need to go do work on trying to settle this, I can't work on trying to settle it and prepare an opposition at the

24

same time.

The idea that -- and, you know, honestly, I worked in big law firms.

MS. SWIZE:  Yes, Your Honor.

THE COURT:  And I know what goes on in big law firms. But it's the firm's responsibility to make sure the work gets done properly.  And if the firm assigns cases and doesn't give the proper instruction and oversight, it's the firm's responsibility and it's their consequence.

And, you know, I'm a little surprised that Jones Day is taking this tact and trying to point to a single lawyer as to not making a deadline when it's the firm's responsibility to make sure and the partners in that law firm to make sure that they are adequately supervising the people who work at that law firm.

MS. SWIZE:  Your Honor, I appreciate you mentioning that because I want to be very clear.  We are not trying to put this on the shoulders of any one lawyer, and certainly not an associate.  I am here as a representative of the firm, and we take full responsibility.

We should have been, particularly with individuals who practice in that court, we should have been, just as much as Troutman, if not more, informing our associates, there are special rules in this court, there are special procedures. Yes, it's a fast pace, yes, you want to get your discovery

25

handled outside of court, but you have to abide by the deadlines and don't fall into a trap of not knowing and making assumptions.

THE COURT: Okay.

MS. SWIZE: Absolutely. And it is our responsibility as a firm, and all of the partners who practice in this court, and just in the partnership in general. We have learned lessons.

What I would like to emphasis is that we do practice here regularly. And again, that doesn't at all excuse that we didn't use that knowledge in this case. But we do come -- we are -- you know, we do strive for perfection. We clearly did not meet it here, but we work very hard and respect the court's rules. And in the other cases we are representing our clients and we value the opportunity to do that.

This was an aberration, but it was an aberration, and we own it, and we are very sorry. We sincerely regret it. And we have looked at it, investigated it, understood where there was a lack of communication, where there were assumptions on both sides when people were speaking with each other, excuse me, with each other. Where there was a lack of supervision. And that is our responsibility. That is nothing on the client. That is our responsibility as the partnership, as the supervision. So I do want that to be very clear.

I do want to explain the particular circumstances

26

just so we have the correct factual record, but in no way was I attempting to point blame to anyone other than the firm and our role.

THE COURT: Okay. Go ahead. The question was really, how does this constitute excusable neglect? Assuming that that would be a standard that should apply when there has been a violation of a Court order.

MS. SWIZE: Your Honor, I think this case really does come down to the reason. Because there has been no -- the one-day delay, we had the hearing. Granted, there was not argument on the merits, but the plaintiff hasn't made an argument and agrees that there wasn't an impact. The date for discovery production is still in the future. The date for discovery to close is still in the future.

For the same reasons, there was no prejudice to the plaintiff. Likewise, we did act in good faith. And plaintiff also acknowledges that we were acting in good faith trying to handle this case, represent these particular issues.

And as in many cases then, the most important point can be the reason for the delay. And that's where I think in context, understanding that we were attentive to the case, we were trying to resolve this, we were also working on the opposition -- we intended to file at a time that would have been useful to the Court and useful to the plaintiff to get our opposition on Wednesday.

27

We then had the snow storm and didn't have the right understanding that that was too late to then file Thursday --

THE COURT:  Well, the snow storm wasn't Wednesday.  The snow storm here wasn't on Wednesday.  The snow storm was on Thursday.

MS. SWIZE:  Right.  And I am sorry, I'm referring to the snow storm in Dallas.  We work out of our offices, work at home.  This is really -- but the client, the declarant was not in a opposition to complete and finalize her declaration on Wednesday because of the snow storm.  And she let us know that.  And again, we should have then contacted the other side, contacted the Court.

But my point is that we endeavored to file in a timely manner.  We were a day late.

The plaintiff has not pointed to a case where a one-day delay is the sort of delay in the circumstances that would warrant not being permitted to have our motion -- our opposition considered so that you can consider the motion to reconsider on the merits.

And at the same time, this is such a significant issue for the client, we certainly were in no way intending not to address it.  In fact, we were doing everything we could both through compromise efforts or alternative resolutions and in filing the opposition.

The cases that don't find excusable neglect are cases

28

where there really is some sort of misconduct or intentional delay. There was a case where the party just decided it wasn't going to answer because it didn't disagree. Or a party glibly said, I'm not good at math.

Our lawyer was trying hard --

THE COURT: No, no. You've got cases where people have used the mail, and it took the mail a long time to get something delivered, or longer than one would have anticipated, and there was no follow-through on that.

You've got someone who used a calendaring system. And the Fourth Circuit reversed that, finding it was an abuse of discretion to find that that was excusable neglect, use a calendaring system and to miss a deadline by, I believe that was one day.

So the idea that there is -- there is no authority to support enforcing a Court rule or order because it was only a day late, I don't think bears scrutiny.

MS. SWIZE: On the mail case, there was a prior incident in that case where the individual had tried to mail something and it didn't take three days, it took longer than that. And the Court noted that in finding that there wasn't excusable neglect.

In other words, there was some prior incident to put that litigant on notice that what they were going to do wasn't going to work.

29

And in this case, given the history of working with the other side to try to avoid motions to compel and coming to the Court, this was the lawyer's first encounter with this sort of motion, the nondispositive motion, and the fast schedule that it's on.  And so, that is not the same as the mail case.

And for the calendaring, again, it was a notice of appeal.  That is a jurisdictional issue.

This, respectfully, is an important issue because of the discovery, the underlying discovery at issue.  But in the full context of promptly taking action the next day and Monday and admitting responsibility, it was our responsibility to catch the deadline, and we didn't.

THE COURT:  Well, isn't it -- and I think maybe I'm misconstruing part of your argument, is you look at the serious nature of what the consequences are of missing a deadline when you look at excusable neglect.  And if the Fourth Circuit finds that you can't appeal a case, which means it is dispositive of an issue, by using a calendaring system that gives you -- that puts you one day late, isn't that a much more serious consequence than having to produce documents in a discovery dispute?

MS. SWIZE:  I'm sorry, Your Honor, I'm not sure --

THE COURT:  So the Symbionics case --

MS. SWIZE:  Right.

THE COURT:  -- the one that I'm talking about.

30

MS. SWIZE: Yes.

THE COURT: The Court in that case, you know, didn't say that the time period is -- that it addressed the excusable neglect argument in the context of that case being one day late, I think. And the consequence of the Court reversing Judge Trenga in finding that he abused his discretion in finding excusable neglect in that case, was that the case could not be appealed, right?

MS. SWIZE: Right, because notices of appeal are jurisdictional.

THE COURT: But there is a time period for getting excusable neglect. And they filed it within the time period in which if there was excusable neglect, it could have been filed. And the consequences of that were much more serious than a discovery dispute.

Do you agree with that?

MS. SWIZE: I understand, Your Honor. And I would again submit that the circumstances of that case are not the circumstances of our case and the circumstances surrounding what happened and went wrong.

The lawyer in that case used a calendaring system that he acknowledged he didn't understand. So again, there was notice that he already had at the time of the error that he shouldn't have been relying on it.

THE COURT: Okay.

31

MS. SWIZE:  We cannot get away from the fact that we as a firm did not comply with the rule.  But it wasn't that the individual lawyer was aware that there was that deadline.  And in the conversations that he was having, with his assumption that Wednesday would be fine because that was his goal, and understanding that Wednesday would be fine because it's the rule, when we passed that deadline, yes, we didn't handle it properly.

But this sort of dialog that was going on with -- now in hindsight we understand where the confusion was and why things went awry, but there was an intent to follow a reasonable time, which would have been Wednesday.  He wasn't on notice and then decided to not follow it or not check into it.

I understand, Your Honor, that as a firm we have a responsibility in every case to follow every rule.  And so, any exception --

THE COURT:  And every order --

MS. SWIZE:  And every order.

THE COURT:  -- of the Court.

MS. SWIZE:  Absolutely, Your Honor.  Any deviation from that is not acceptable.  Mistakes do happen.  In the circumstances of this case where there was effort to comply, where there was this independent sense of I need to file something in a timely manner so the other side has it and the Court has it -- unfortunately, we ran into issues getting it

32

done on time.  And our intent to come to court and take full responsibility for that, in a circumstance where the lawyer didn't have experience with this sort of situation, and we weren't communicating well to make sure that he knew and that we understood the deadline, and it was a one-day delay that hasn't prejudiced the other side, that the standard for neglect inherently recognizes there has been some neglect, and so in order to allow for mistakes to be understood in their context, there is the standard that you look at the circumstances, and it's an equitable determination.

And we would submit that the circumstances of this case satisfy that.  But also recognizing that we -- it was within our control and it was within the control of the partnership to know this deadline.  And we have certainly learned ways that we will change how we handle these cases and other cases.

THE COURT:  Anything else on the motion for reconsideration?

MS. SWIZE:  No, Your Honor, not unless you have any further questions.

THE COURT:  No.  All right.  Well, you know, I've reviewed the pleadings.  I was involved in this hearing last week.  I think I've made my -- many of my thoughts known during the discussions and the colloquy I have had with counsel.

But this is a case in which there was a Court order

33

that was entered that set a schedule. I think I am bound to have a need for lawyers, law firms, and parties to comply with Court orders. And, you know, the idea that I cannot be aware of a Court order, or I can ignore a Court order, or I can pick my own deadlines, isn't really acceptable in this court.

This Court entered the Rule 16 order. It was entered in this case in the normal course of business. It has a very standard procedure in it that Jones Day and Experian is very aware of, as is Troutman. So the lawyers involved in this case know what that -- the law firms involved in this case certainly know what the deadlines were.

The idea that we were trying to work out some dispute is commendable, but it isn't excusable for not filing a timely opposition in this case.

And, you know, I said last week that you would have to show good cause in order to have me reconsider this decision. And there is no good cause in this case. There was a mistake that was made, and consequences come about when mistakes are made.

And, you know, the opposition -- if -- the way in which this was handled in filing the opposition at 2 o'clock and then saying, well, we'll just take care of it the next day if the issue really comes up, you know, is really, really hard for anyone on the bench to understand that a lawyer would take that position or that a law firm would take that position.

34

We'll just go ahead and file it and we'll try and deal with the issue later.  Not even drop a footnote.  Not take the next, you know, half an hour to prepare a, you know, motion for leave to file a pleading late.  Just filing it and deciding, we'll take our chances the next morning, is inappropriate.

I am not going to reconsider my decision.  I think my decision was proper at the time.  I think the record that is now before me reinforces that decision even more.  That a mistake was made.  The mistake was not excusable.  The mistake was one that could have easily been rectified with proper supervision, with proper looking at the docket.  The docket was clear.  With proper communication.

And so, I don't find that this is an appropriate case for me to reconsider my earlier decision.  So my earlier decision, at least in the context of the motion to compel, is going to stand.

Are you going to argue the stay issue?  Who is going to argue the stay issue?

MS. SWIZE:  I have that as well, Your Honor.

My understanding is that we are in a position to produce documents.  We've been working to respond to the Court's order in the event it stands.  And so that deadline is on Tuesday, and we are in a position to make a production.

There is some question about the scope of what plaintiff is seeking, and so we can consult with plaintiff

35

about that.

The other issue is if we were to file any objections from the Court's order on this --

THE COURT:  Right.

MS. SWIZE:  Then, you know, just given the timing, it's going to be out of sequence if we've already disclosed these materials, which are highly sensitive.  Very few people at Experian have access to them.  And it is very important that they remain confidential and not disclosed if they should not be.

And so, we would ask that the Court consider some sort of stay to accommodate if we were to file any objections.

THE COURT:  Okay.  What I'm going to is I'm going to stay the requirement to produce these documents to Monday, March 23.

MS. SWIZE:  Okay.

THE COURT:  If you want to file a request for the District Judge to reconsider my decision, you're going to need to do it today and notice it for next Friday.  So file it today.  You can notice it for the 20th.  Judge O'Grady will decide it on the 20th.  If he reconsiders my decision, then you won't have to produce the documents.  If he doesn't, then you need to produce them on March 23.

MS. SWIZE:  Thank you, Your Honor.

THE COURT:  Okay.  So that will give you that

36

opportunity.  And one of the reasons I'm putting that tight timetable is there is an April 10 discovery cutoff date, and Judge O'Grady isn't hearing motions the following Friday.  So it really needs to get done next Friday.

So if you want to take this argument up to Judge O'Grady, you need to file it today and notice it for next Friday at 10 o'clock.

Okay?

MS. SWIZE:  Thank you, Your Honor.

THE COURT:  Ms. Kelly, anything you need to add to the record?

MS. KELLY:  No, Judge.  Thank you.

THE COURT:  Okay, thank you.  All right, I'm going to take a two-minute recess, and then I will take up the 11 o'clock criminal matter.

Thank you.

NOTE:  The hearing concluded at 11:03 a.m.

------------------------------------------------

37

C E R T I F I C A T E   of   T R A N S C R I P T I O N

I hereby certify that the foregoing is a true and accurate transcript that was typed by me from the recording provided by the court.  Any errors or omissions are due to the inability of the undersigned to hear or understand said recording.

Further, that I am neither counsel for, related to, nor employed by any of the parties to the above-styled action, and that I am not financially or otherwise interested in the outcome of the above-styled action.

/s/ Norman B. Linnell

Norman B. Linnell

Court Reporter - USDC/EDVA